**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY, S.I. f/k/a | ) | |
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:24-cv-00506-MPB-MJD |
| | ) | |
| WYNDHAM HOTELS & | ) | |
| RESORTS INC., | ) | |
| AKSHAR KRUPA INDIANA, | ) | |
| L.L.C. d/b/a SUPER 8 MOTEL, and | ) | |
| G.M., an individual | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO WYNDHAM HOTELS & RESORTS, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

By way of its Motion to Dismiss, Defendant Wyndham Hotels & Resorts, Inc. ("Wyndham") asks this Court to take at least two remarkable positions.

First, it asks the Court to conclude that Wyndham can insert itself into a contract under which it is not a party and has no rights or interests. Reaching this requested conclusion would require the Court to rewrite multiple agreements to create coverage for Wyndham.

Second, it asks the Court to conclude that Wyndham is entitled to insurance coverage for allegedly profiting from child sexual trafficking. Reaching this requested conclusion would require the Court to ignore both policy language and public policy. And reaching such a conclusion would require the Court to effectively hold that Indiana allows entities to use insurance to protect profits earned from child sexual trafficking.

Neither position is tenable, and Wyndham presents no other basis warranting the dismissal of the Amended Complaint. Its Motion to Dismiss (Dkt. 45) should be denied.

1

# I.    FACTUAL BACKGROUND

This lawsuit addresses whether Plaintiff American Family Mutual Insurance Company S.I. f/k/a American Family Mutual Insurance Company ("American Family") must provide any coverage in connection with a child sexual trafficking lawsuit filed against Wyndham. *See* Dkt. 35.[1]

## A.    The Underlying Lawsuit

In the Southern District of Ohio, G.M. filed a human sexual trafficking lawsuit against Wyndham (and other defendants), alleging in part that Wyndham bears liability in connection with sexual trafficking conducted between August 2016 and October 2016 at the Super 8 motel located at 4033 E Southport Road in Indianapolis (the "Motel") (the "Underlying Lawsuit").[2]  Dkt. 35 at ¶¶ 8-17; Dkt. 35-1. Through the Underlying Lawsuit, G.M. seeks various damages and relief from Wyndham, including punitive damages. Dkt. 35 at ¶ 16; Dkt. 35-1 at 48. While the Underlying Lawsuit includes other claims against other defendants, the Underlying Lawsuit does not include any claims against Akshar Krupa Indiana L.L.C. ("Krupa"). Dkt. 35-1.[3]

## B.    Policy

American Family issued a businessowners policy to Krupa, which was effective through August and October 2016, but that policy does not reference Wyndham. Dkt. 35 at ¶ 18; Dkt. 35-2 (the "Policy").[4] Indeed, the Policy does not refer to Wyndham as a named insured, additional insured, or otherwise. Dkt. 35-2. Of course, the Policy does not provide coverage for every lawsuit

---

[1] Under Rule 12(b)(6), a court accepts the plaintiff's well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor.  *Thompson v. Ill. Dep't of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

[2] For purposes of clarity, the Underlying Lawsuit is styled *G.M. v. Choice Hotels International, Inc., et al.*, Case No. 2:22-cv-03788-ALM-EPD and is currently pending in the United States District Court for the Southern District of Ohio. *See* Dkt. 35-1.

[3] Throughout this Response, American Family refers to G.M.'s allegations asserted in the Underlying Lawsuit. American Family acknowledges these allegations may be unproven, untrue, and/or otherwise without merit, but at this stage, American Family generally accepts them as true for purposes of determining its coverage obligations.

[4] In footnote 3 of its Brief, Wyndham makes a passing reference to the potential of coverage for Super 8 Worldwide, Inc. under the Policy in connection with the Underlying Lawsuit. Dkt. 46 at 7-8, n.3. But no claim has been asserted against Super 8 Worldwide, Inc. in connection with the Underlying Lawsuit and, thus, no coverage would be available under the Policy for it in the first instance. Dkt. 35-1.

involving even those that *do* qualify as "insureds" under the Policy. *Id*. Rather, like most insurance policies, the Policy only requires American Family to provide coverage under specific circumstances. *Id*.  Among other things, American Family has no duty to defend against any suit to which the Policy does not apply. Dkt. 35-2 at 34.

**C.    Wyndham's Claim**

Wyndham sought coverage under the Policy for the Underlying Lawsuit, and American Family has agreed to defend Wyndham under a full reservation of rights. Dkt. 35 at ¶¶ 32-34. While American Family has continued to defend Wyndham under a full reservation of rights, it has identified multiple reasons why the Policy does not provide coverage the coverage Wyndham seeks. *See generally* Dkt. 35. American Family's Amended Complaint sets forth the general bases for its position that the Policy does not provide coverage in connection with the Underlying Lawsuit. *Id*. Ultimately, through this action, American Family seeks declarations regarding its coverage obligations under the Policy.  *Id*. at ¶¶ 36-75.

**D.    Wyndham's "Factual Background"**

In deciding motions under Rule 12(b)(6), courts generally only consider the pleadings (including exhibits attached to the pleadings and certain documents referenced in the pleadings) and other matters which may be judicially noticed.  *See, e.g.*, *Couch v. Wilco Life Ins. Co.*, 363 F. Supp. 3d 886, 895 n.1 (S.D. Ind. 2019); *DeWald v. Zimmer Holdings, Inc.*, No. 1:09–cv–00745–SEB–DML, 2011 WL 6782806, at *1 n.2 (S.D. Ind. Dec. 23, 2011).

In the "Factual Background" section of its Brief, Wyndham refers to matters outside the pleadings that cannot be judicially noticed. *See, e.g.*, Dkt. 46 at 9 (stating, without citation, "Under the franchise agreement, Krupa was required to acquire liability insurance and to name certain Wyndham entities as additional insureds under that insurance."); *see also id*. at 7-10.  Even if those matters could be considered at this stage, Wyndham does not provide citation to support them. *Id*.

3

In deciding Wyndham's Motion, the Court should not consider these unsupported statements based on matters outside the pleadings or matters which cannot be judicially noticed.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6) Standard

Wyndham seeks dismissal of American Family's Amended Complaint under Rule 12(b)(6). A motion under that Rule tests the legal sufficiency of the complaint. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Such a motion does not, however, test the merits of the case. *Id*.

Ultimately, "Rule 12(b)(6) will be invoked to dismiss a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Hampton v. Perry*, No. 1:20-cv-00759-TWP-MPB, 2020 WL 4430586, at *1 (S.D. Ind. July 31, 2020) (internal citations omitted); *see also Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881-82 (7th Cir. 2022). In other words, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff needs to assert factual allegations that "raise a right to relief above the speculative level" on the assumption that all the allegations are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Hampton*, 2020 WL 4430586, at *2.

### B.   Insurance Standards

While the duty to defend may be broad under Indiana law, it is not boundless. *West Bend Mut. Ins. Co. v. U.S. Fidelity & Guar. Co.*, 598 F.3d 918, 922 (7th Cir. 2010). Where the underlying lawsuit asserts only claims that fall outside the risks covered by a policy, an insurer may properly refuse to defend its insured in the underlying lawsuit. *Id*. In other words, "when the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co. of Wisc.*, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003) (quoting *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. Ct. App. 1980)). Thus, an insurer's denial may be warranted

4

because the allegations do not trigger coverage under the implicated policy in the first instance or because an exclusion or other term in the policy precludes coverage. *West Bend*, 598 F.3d at 922; *Aluminum Trailer Co. v. Westchester Fire Ins. Co.*, 522 F. Supp. 3d 464 (N.D. Ind. 2021).

Since the duty to defend is broader than the duty to indemnify, where an insurer does not owe a duty to duty defend its insured, it does not owe a duty to indemnify the insured either. *Allstate Ins. Co. v. Preferred Fin. Solutions, Inc.*, 8 F. Supp. 3d 1039, 1054 (S.D. Ind. 2014). Accordingly, a court may determine an insurer is not obligated to defend or indemnify its insured even before the underlying lawsuit concludes. *Id.*; *Lightning Rod Mut. Ins. Co. v. Bagshaw*, No. 4:18-cv-00216-RLY-DML, 2021 WL 11963037, at *5 (S.D. Ind. Mar. 16, 2021).

### III.    ARGUMENT

### A.    Wyndham Is Not An Insured Under The Policy

Wyndham asks the Court to dismiss the Amended Complaint because Wyndham believes American Family has failed to state a claim that Wyndham is not an "insured" under the Policy. Dkt. 46 at 16-18. But American Family has properly stated that claim, and nothing in Wyndham's Brief warrants dismissing the case on this ground.

Put simply, American Family issued this 2015 Policy to Krupa—not Wyndham. *See* Dkt. 35-2 at 5. While the Policy also designated certain entities "additional insureds" under the Policy, Wyndham is not a designated entity. *Id.* at 75. And although Wyndham claims it received an assignment of rights under an agreement made nine years earlier in 2006, that agreement does not reference the 2015 Policy or the assignment of any rights under any policy that would not exist until nine years later.[5] So Wyndham asks the Court to blue-pencil the 2006 agreement to allow Wyndham

---

[5] *See* Separation and Distribution Agreement, by and among Cendant Corporation, Realogy Corporation, Travelport Inc., and Wyndham Worldwide Corporation, dated July 27, 2006, https://www.sec.gov/Archives/edgar/data/723612/000119312506158308/dex21.htm; *see also* Fed. R. Evid. 201; *DeWald v. Zimmer Holdings, Inc.*, No. 1:09–cv–00745–SEB–DML, 2011 WL 6782806, at *1 n.2 (S.D. Ind. Dec. 23,

5

access to the 2015 Policy now. Dkt. 46 at 16-18. Of course, doing so would violate basic tenets of contract law, the rights of Cendant Corporation (the entity that *was* designated), and common sense.

As a threshold matter, the Policy only requires American Family to provide coverage to those qualifying as an "insured" for purposes of the Policy. Dkt. 35-2 at 34 ("We will pay those sums that the insured becomes legally obligated to pay as damages . . . ."). To that end, the Policy's "Who Is An Insured" provision generally identifies the individuals or entities that qualify as an "insured" under the Policy. *Id.* at 13 ("The word 'insured' means any person or organization qualifying as such under Paragraph C. Who Is An Insured."); *id.* at 41. But an entity that does not fall into any category listed in the "Who Is An Insured" provision still may qualify for coverage if other provisions in the Policy render it an "insured." For instance, this Policy includes an "Additional Insured—Designated Person or Organization" Endorsement that can make a designated organization an additional insured under the Policy in certain circumstances. *Id.* at 75. In its Amended Complaint, American Family alleges it is not obligated to provide coverage because Wyndham does not qualify as an "insured" under the Policy. *See* Dkt. 35 at ¶ 39.

Specifically, Wyndham does not qualify as an "insured" under the first option—the "Who Is An Insured" provision—because it does not fit within any of the listed categories. Dkt. 35-2 at 41. In fact, Wyndham does not claim that it does. Dkt. 46 at 16-18. The Policy was issued to Krupa, ***not Wyndham***, and the Policy does not list Wyndham as a "named insured." Dkt. 35-2 at 5, 41. While the provision dictates a member or manager of a "named insured" can qualify as an "insured" in certain cases, Wyndham does not claim to be a manager or member of Krupa. *Id.* at 41; Dkt. 46 at 16-18.

---

2011) ("The Court may also take judicial notice of matters in the public record, such as SEC filings, on a motion to dismiss.").

4893-1559-3174.13

Similarly, Wyndham does not qualify as an insured under the second option—other provisions within the Policy, including the "Additional Insured—Designated Person or Organization" Endorsement—because no other provision references or includes Wyndham as an "insured." Dkt. 35-2. While the "Additional Insured—Designated Person or Organization" Endorsement makes certain scheduled organizations additional insureds the Policy under certain circumstances, Wyndham is not scheduled in that Endorsement. *Id*. at 75. Rather, the Endorsement references only: "Super 8 Motels Inc. Cendant Corporation." *Id*. Ultimately, no provision in the Policy references "Wyndham Hotels & Resorts, Inc.," the defendant named in the Underlying Lawsuit. Dkt. 35-2.

Undeterred, Wyndham nevertheless claims it qualifies as an "additional insured" because it "is the successor (through [another entity]) to Cendant's additional insured rights under the Policy." Dkt. 46 at 17. But even the documents Wyndham cites prove it is not. *Id*.

Among other things, timing undermines Wyndham's claim. Under Wyndham's logic, it qualifies as an "additional insured" because: (1) Cendant Corporation is an "additional insured" under the Policy; (2) Wyndham Worldwide Corporation was the successor and assign of Cendant Corporation's rights under the Policy; and (3) Wyndham is the successor to Wyndham Worldwide Corporation. But the alleged succession and assignment between Cendant Corporation and Wyndham Worldwide Corporation occurred in 2006—***more than nine years before the Policy was effective and the alleged conduct happened***. Cendant Corporation did not (and could not) assign any rights under a future 2015 insurance policy to Wyndham Worldwide Corporation in 2006. [6]

---

[6] Separation and Distribution Agreement, by and among Cendant Corporation, Realogy Corporation, Travelport Inc., and Wyndham Worldwide Corporation, dated July 27, 2006, https://www.sec.gov/Archives/edgar/data/723612/000119312506158308/dex21.htm.

Tellingly, Wyndham never identifies *where* in the cited agreement Cendant Corporation assigned rights under the Policy. Dkt. 46 at 17. While Wyndham generally notes that "Article XI of that agreement addresses the succession and assignment of insurance rights related to the subject hotel business[,]" that Article does not reference or address the Policy.[7] Dkt. 46 at 17, n. 10. Rather, it references the assignment or transfer of "Hospitality Policies" and "Hospitality Shared Policies" from Cendant Corporation to Wyndham Worldwide Corporation.[8] But both of those terms are defined to refer only to "current or past" policies "maintained by or on behalf of Cendant . . . . ." *Id.* The Policy was not a "current or past" policy in 2006. Dkt. 35-2. Moreover, Article XI expressly refers to coverage for liabilities incurred prior to the 2006 "Wyndham Distribution Date." *Id.* Put simply, Cendant Corporation could not and did not transfer any rights under the Policy at issue here.

That Cendant Corporation did not transfer any rights under the Policy is made even more clear by the fact that Cendant Corporation has continued to exist after the referenced 2006 agreement. Eventually, Cendant Corporation changed its name to Avis Budget Group, Inc.[9] That entity continues to exist today.[10] Notably, Wyndham has not provided any evidence that Cendant Corporation assigned any rights under any policy (let alone, the Policy) after 2006. At the time the Policy became effective in December 2015, it designated only "Super 8 Motels Inc. Cendant Corporation" in the relevant schedule. Dkt. 35-2 at 75. Cendant Corporation is not named as a defendant in the Lawsuit. Dkt. 35-1. In any event, since Wyndham is not "Super 8 Motels Inc.

---

[7] Separation and Distribution Agreement, by and among Cendant Corporation, Realogy Corporation, Travelport Inc., and Wyndham Worldwide Corporation, dated July 27, 2006, https://www.sec.gov/Archives/edgar/data/723612/000119312506158308/dex21.htm.

[8] Separation and Distribution Agreement, by and among Cendant Corporation, Realogy Corporation, Travelport Inc., and Wyndham Worldwide Corporation, dated July 27, 2006, https://www.sec.gov/Archives/edgar/data/723612/000119312506158308/dex21.htm.

[9] Avis Budget Group, Inc., Form 8-K, dated September 5, 2006, https://www.sec.gov/Archives/edgar/data/723612/000072361206000058/cendantcorporation8k.htm

[10] Avis Budget Group, Inc., Form 8-K, dated December 27, 2023, https://www.sec.gov/Archives/edgar/data/723612/000095014224000026/eh230433452_8k.htm

Cendant Corporation" and has not shown it possesses any rights under the Policy belonging to "Super 8 Motels Inc. Cendant Corporation," it is not an "additional insured."[11] [12]

**B.    Public Policy Bars Coverage For Wyndham**

Next, Wyndham asks the Court to dismiss the Amended Complaint because it believes American Family has failed to state a claim that public policy precludes coverage for the Underlying Lawsuit. But established Indiana public policy does preclude coverage for those who allegedly participated in, and profited from, child sexual trafficking. Any other result would threaten the morals and safety of the public.

**1.    Public Policy Can Preclude Insurance Coverage Under Indiana Law**

For decades, Indiana courts have recognized public policy may preclude insurance coverage for certain conduct and claims. *See, e.g.*, *Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467, 471-72 (Ind. Ct. App. 1996); *Am. Economy Ins. Co. v. Liggett*, 426 N.E.2d 136, 140 (Ind. Ct. App. 1981); *Town of Orland v. Nat. Fire & Cas. Co.*, 726 N.E.2d 364, 371-72 (Ind. Ct. App. 2000); *Exec. Builders, Inc. v. Motorists Ins. Cos.*, No. IP 00-0018-C-T/G, 2001 WL 548391, at *5 (S.D. Ind. Mar. 30, 2001).

Indeed, despite the presumption often applied, not every contract term is enforceable in every circumstance. *Fresh Cut v. Fazli*, 650 N.E.2d 1126, 1130 (Ind. 1995). Rather, Indiana "courts have refused to enforce private agreements that [1] contravene statute, [2] clearly tend to injure the public in some way, or [3] are otherwise contrary to the declared public policy of Indiana." *Id.* As a result,

---

[11] Even if Wyndham did qualify as an "additional insured" under this Endorsement, it would only be an "additional insured" with respect to liability for certain injuries or damages caused, in whole or in part, by Krupa's acts or omissions or those acting on Krupa's behalf. The Underlying Lawsuit asserts claims against Wyndham, not Krupa, arising from Wyndham's own conduct. But again, the Court need not address this issue because Wyndham does not qualify as an "additional insured" under the Endorsement.

[12] American Family also alleged that the Policy does not provide coverage to Wyndham as an "indemnitee" because the Underlying Lawsuit was not filed against Krupa or any other insured under the Policy. Dkt. 35 at ¶ 51. Wyndham does not address this allegation in its Brief—presenting yet another reason to deny its Motion. Dkt. 46.

Indiana courts have ruled agreements contrary to public policy are void and unenforceable. *See, e.g.*, *Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 601 (Ind. 1994) (where sexual intercourse was consideration for contract, contract was "void and unenforceable" because it was "against public policy").

In determining whether to enforce a contract that may violate public policy, courts often consider: (i) "the nature of the subject matter of the contract[;]" (ii) "the strength of the public policy underlying the statute[;]" (iii) "the likelihood that refusal to enforce the bargain or term will further that policy[;]" (iv) "how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain[;]" and (v) "the parties' relative bargaining power and freedom to contract." *Fazli*, 650 N.E.2d at 1130. (internal citations omitted). And determining whether the public policy exists in Indiana generally requires evaluating Indiana's "[c]onstitution, its statutes, the practice of its officers in the course of administration, and the decisions of its court of last resort." *WellPoint, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 N.E.3d 716, 724 (Ind. 2015) (internal citations and quotations omitted).[13]

Since Indiana treats insurance policies like other contracts, insurance coverages that violate public policy have been deemed unenforceable too. *See, e.g.*, *Stevenson*, 672 N.E.2d at 471-72. In fact, insurance provisions may be unenforceable with respect to specific conduct as a result of public policy even where the insurance policy itself does not expressly preclude coverage for the implicated conduct.[14]

---

[13] Note that while *WellPoint* (a case relied upon by Wyndham) addresses different issues than those raised here, the court in *WellPoint* acknowledged public policy may preclude "occurrence-based coverage" (like that under the Policy) for criminal-related conduct. *Id.* at 725.

[14] *See, e.g.*, *Wood v. Allstate Ins. Co.*, 21 F.3d 741, 742 (7th Cir. 1994) (explaining that Indiana law would imply exclusion "as a matter of public policy" even if policy "lacked such a provision"); *Thompson Hardwoods, Inc. v. Transportation Co.*, No. NA 00-74-C H/K, 2002 WL 440222, at *7 (S.D. Ind. Mar. 15, 2002); *Iemma v. Adventure RV Rentals, Inc.*, 632 N.E.2d 1178, 1182-83 (Ind. Ct. App. 1994) ("'Implied exceptions' are those exceptions which are not expressly written into insurance contracts but which have been created to deny coverage where public policy concerns mandate such a result[.]").

10

For instance, Indiana courts have frequently noted that public policy may preclude insurance coverage for certain moral hazards. The court in *Town of Orland* explained, "public policy demands that a person not be permitted to insure against harms he may intentionally cause others . . . ." 726 N.E.2d at 371-72.  In *Thompson Hardwoods*, the court likewise remarked, "the common law of Indiana imposes some limits on insurance coverage for such moral hazards as allowing an insured to collect for a loss the insured has intentionally caused."  2002 WL 440222, at *7. The *Stevenson* court cited a similar pronouncement: "Courts have clearly and repeatedly affirmed the general proposition that public policy prohibits the use of insurance to provide indemnification for civil tort liability that results from an insured's intentional wrongdoing." 672 N.E.2d at 472 (quoting R.E. KEETON & A.I. WIDISS, INSURANCE LAW § 5.4(d)(1) (1988)).

Preventing insureds from benefiting—even indirectly—from engaging in moral hazards by precluding coverage serves multiple purposes.  Among other things, it deters the conduct and prevents insureds from shifting the consequences of the conduct to a third party. *See Iemma*, 632 N.E.2d at 1183. If the insured could retain the proceeds of its wrongful conduct by shifting the resulting liability to its insurer, the insured effectively would obtain "a license to engage in such activity." *Town of Orland*, 726 N.E.2d at 371-72.

Given this goal, public policy can preclude insurance coverage even where an innocent party might ultimately benefit from the insured obtaining insurance coverage. *See Town of Orland*, 726 N.E.2d at 371-72. In other words, in cases where a third-party claimant has asserted a claim against the insured and stands to recover the ultimate proceeds of any insurance coverage, public policy still may preclude coverage based upon the nature of the conduct giving rise to the claim. Even in those cases, allowing the insured to obtain coverage for its conduct would indirectly benefit the insured, giving it a "license" to participate in the harmful conduct.  *Id*.

2.     <u>Indiana Has A Public Policy Against Human & Sexual Trafficking</u>

Through its statutes, the practices of its officers in the course of administration, and the decisions of its courts of last resort, Indiana has expressed and established a public policy against human and sexual trafficking—particularly of children. Among other things, it seeks to prevent human and sexual trafficking and the profiting from that conduct. Suggesting the opposite ignores the fundamental dignities that Indiana has sought to preserve. It would support conduct that infringes on the morals and safety of the public.

For more than fifteen years, Indiana has relied on ever-expanding human and sexual trafficking statutes to further its public policy. In 2007, Indiana responded to a human trafficking event in the state by making its first human and sexual trafficking statutes effective. *See, e.g.*, Ind. Code § 35-42-3.5-1 (2007). Among other things, those statutes criminalized promotion of human and sexual trafficking. Ind. Code § 35-42-3.5-1 (2007). The statues also required courts to provide restitution to victims. Ind. Code § 35-42-3.5-2 (2007).

Since 2007, Indiana has amended its human and sexual trafficking laws on multiple occasions—each amendment further confirming Indiana's strong public policy against human and sexual trafficking. For instance, in 2012, Indiana lawmakers strengthened the existing laws by passing additional human trafficking legislation. *See, e.g.*, Ind. Code § 35-42-3.5-1 (2012). Among other things, the updated legislation expanded the list of punishable offenses, meaning Indiana criminalized more forms of human trafficking. *Id*. Today, Indiana's human and trafficking laws criminalize even broader human and sexual trafficking-related conduct. *See* Ind. Code §§ 35-42-3.5-1 *et. seq*. Not surprisingly, Indiana's public policy against human and sexual trafficking is particularly pronounced with respect to the trafficking of children. *See* Ind. Code § 35-42-3.5-1.3.

Notably, the statutory support for Indiana's established public policy now extends beyond the "Human and Sexual Trafficking" section of the Indiana Code. For instance, Indiana Code § 34-

24-1-1(a)(16) allows for the seizure of real and personal property used by a person to "facilitate the commission" of a violation of human trafficking under Indiana's statutes. Likewise, Indiana Code § 5-2-1-9(a)(13) requires the establishment of minimum standards for a law enforcement course covering human and sexual trafficking. Last year, Indiana enacted legislation requiring new commercial drivers to watch an instructional video regarding how to recognize, prevent, and report human trafficking. Ind. Code § 9-24-6.1-2.5.

Of course, evidence of Indiana's public policy against human and sexual trafficking is not limited to its statutory scheme either. For instance, as Indiana courts have recognized, Indiana has a statewide human trafficking task force: the Indiana Protection for Abused and Trafficked Humans (IPATH). *Scott v. State*, 162 N.E.3d 578, 582 (Ind. Ct. App. 2021).

For their part, Indiana courts have similarly demonstrated a public policy against human and sexual trafficking by enforcing the human and sexual trafficking statutes. *See, e.g.*, *Williams v. State*, 204 N.E.3d 279, 281 (Ind. Ct. App. 2023) (upholding conviction for Level 3 felony promotion of child sexual trafficking); *Van Auken v. State*, 233 N.E.3d 1042, 1052-55 (Ind. Ct. App. 2024) (upholding conviction for Level 3 felony promotion of sexual trafficking of a younger child and aggregate 69-year sentence). For more than a century, courts have also emphasized the more general rule that defendant should not be permitted to benefit, even indirectly, from its criminal acts. *See, e.g.*, *Mount v. Bd. of Comm'rs of Montgomery Cnty.*, 80 N.E. 629, 631 (Ind. 1907) ("To hold otherwise would be to afford an indirect incentive to the doing of the very acts of evil which the law–making power was seeking to suppress.").

Separately and in combination, Indiana's statutes, the practices of its officers in the course of administration, and the decisions of its courts of last resort evidence a strong and expanding public policy against human and sexual trafficking. Not only does Indiana criminalize conduct

involved in human and sexual trafficking, it also prevents parties from benefitting (financially or otherwise) from such conduct.

      3.      <u>The Underlying Lawsuit Asserts Claims For Human & Sexual Trafficking</u>

In the Underlying Lawsuit, G.M. asserts Wyndham participated in, and knowingly benefited from, the sexual trafficking of a minor. Dkt. 35-1. In sum, the factual and legal predicate of G.M.'s claim is that, in the face of overwhelming evidence of the trafficking scheme, Wyndham knowingly benefited from its participation in the sexual trafficking of a child that involved the child being "repeatedly raped and otherwise sexually abused thousands and thousands of times" at the Motel. Dkt. 35-1 at ¶ 86; *see generally*, Dkt. 35-1.

Throughout the nearly 50-page Complaint, G.M. identifies examples of conduct Wyndham undertook as part of the alleged sexual trafficking venture—actions which allowed Wyndham to "knowingly" profit from the venture. *See, e.g.*, *id*. at ¶¶ 81-87, 122, 129, 170-171. Her Complaint leaves no doubt as to her assertions regarding Wyndham's active role in the alleged trafficking, as it includes multiple allegations regarding Wyndham's conduct and an entire section explaining how Wyndham "facilitated the trafficking of G.M." *See, e.g.*, *id*. at ¶¶ 55-56, 81-87, 122, 129, 118-130, 170-171. And according to G.M., Wyndham "failed to take any steps" sufficient "to stop reaping the benefits of sexual exploitation[.]" *Id*. at ¶ 129. Rather, G.M. asserts Wyndham ignored "open," "obvious," and "consistent red flags" and "maintained [its] deficiencies to maximize profits[.]" *Id*. at ¶¶ 85, 87, 129.

Despite Wyndham's claims otherwise, G.M.'s allegations track Indiana's human and sexual trafficking statutes. Indiana's human trafficking statutes dictate that a person "who, by force, threat of force, coercion, or fraud, knowingly or intentionally recruits, harbors, provides, obtains, or transports an individual to engage the individual in labor or services commits promotion of human labor trafficking[.]" Ind. Code § 35-42-3.5-1. In her Complaint, G.M. expressly claims Wyndham

"**facilitat[ed] violations of the TVPRA through [its] participation in the harboring, maintaining, soliciting, and advertising of Plaintiff and her traffickers for the purposes of commercial sex induced by force, fraud, or coercion**." *Id*. at ¶ 170 (emphasis added). G.M. does not seek to hold Wyndham liable for the conduct of the traffickers; she seeks to hold Wyndham liable for its own responsibilities and conduct relating to the alleged trafficking. Dkt. 35-1; *id*. at ¶ 9. If G.M.'s allegations are true, Wyndham knowingly benefited from its participation in the sexual trafficking of a child. Dkt. 35-1.

       4.     <u>Public Policy Precludes Coverage For The Underlying Lawsuit</u>

Simply put, Indiana does not allow insureds to profit from child sexual trafficking. While Wyndham asks the Court to ignore Indiana's established public policy and create a new policy that would allow insured defendants to benefit from participating in sexual trafficking ventures, the Court should not do so.

As noted above, Indiana has established a public policy against the type of conduct that G.M. alleges Wyndham engaged in at the Motel. That public policy seeks to deter human and sexual trafficking and punish those who profit from it. Ind. Code § 35-42-3.5 *et seq*. That is particularly true for the alleged sexual trafficking of children, like G.M. Ind. Code § 35-42-3.5-1.3; Dkt. 35-1 at ¶ 174. Not only does Indiana criminalize human and sexual trafficking, it prevents parties engaging in that conduct from benefiting from it. *See* Ind. Code § 35-42-3.5-2; Ind. Code § 35-42-3.5-3; Ind. Code § 34-24-1-1(a)(16).

Given Indiana's public policy on this matter and given Wyndham's alleged conduct, the Policy cannot provide coverage to Wyndham for the Underlying Lawsuit. Requiring American Family to provide coverage where Wyndham allegedly benefited from participation in child sexual trafficking would wholly undermine Indiana's public policy. Among other things, it would allow Wyndham to shift the consequences and costs of its alleged conduct to American Family. As long

4893-1559-3174.13

as Wyndham was insured, it could profit from alleged human and sexual trafficking. Indiana does not permit human and sexual trafficking in the first instance, let alone *profiting* from human and sexual trafficking.

Moreover, requiring American Family to provide coverage to Wyndham would not deter Wyndham (or any other party) from facilitating child sexual trafficking. Just the opposite—it would effectively countenance such conduct by allowing an insured to profit from the conduct and shifting costs to the insurer. As one court has already noted under similar circumstances, such a result would be "against the safety, morals, and welfare of the [state]." *Samsung Fire & Marine Ins. Co., Ltd. (U.S. Branch) v. UFVS Mgmt. Co.*, No. 18-04365, 2023 WL 2574971, at *8 (E.D. Pa. Mar. 20, 2023), *appeal docketed*, No. 23-1988 (3d Cir. June 1, 2023). The moral hazard associated with relieving an insured defendant of financial responsibility for participating in the sexual trafficking of minors is significant, despite Wyndham's attempt to minimize it.

Conversely, *barring* coverage for the claims would have the opposite effect. It would require those like Wyndham to conduct their business in a way that furthers public policy by seeking to prevent human and sexual trafficking. Tellingly, G.M.'s Complaint indicates that if Wyndham had paid more attention to the multiple "red flags" and acted "properly," it could have prevented G.M. from being "raped and otherwise sexually abused thousands and thousands of times" at the Motel. *Id*. at ¶¶ 13, 85-87, 129, 125 (asserting that if Wyndham if "would have taken proper measures, [it] would not have profited from G.M. and other victims like her being trafficked at [the Motel].").

Under similar circumstances, other courts have determined public policy precludes coverage for claims arising out of sexual trafficking—even where the claims are not asserted against the traffickers themselves. *See, e.g.*, *Samsung*, 2023 WL 2574971, at *7-8; *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636, 643 (E.D. Pa. 2018) (holding that "public policy precludes coverage" for human trafficking claims), *aff'd on other grounds*, 781 F. App'x 57 (3d Cir. 2019);

16

*Nautilus Ins. Co. v. Motel Mgmt. Services, Inc.*, No. 20-289, 2021 WL 3164292, at *5, n. 4 (E.D. Pa. July 27, 2021) (explaining that because amended complaint sought damages for facilitation of child sexual trafficking, "public policy reasoning continues to apply" to preclude coverage), *aff'd on other grounds*, 2022 WL 15722613 (3d Cir. 2022); *Nautilus Ins. Co. v. Motel Mgmt. Services, Inc.*, No. 20-1607, 2021 WL 4123915, at *3 n. 31 (E.D. Pa. Sep. 9, 2021) ("The Court also agrees . . . that insurance coverage would be against public policy."), *aff'd on other grounds*, 2022 WL 15722613 (3d Cir. 2022).

While Wyndham claims public policy cannot preclude coverage because Wyndham has not been convicted of any crime relating to G.M., Indiana does not require an underlying conviction to determine public policy bars insurance coverage. *See, e.g.*, *Town of Orland*, 726 N.E.2d at 371-72 (explaining public policy could bar coverage even where abuse of process claim had not been decided against insured). That Wyndham has not been criminally convicted in connection with G.M.'s claims does not affect whether public policy bars coverage for the claims in the first instance. What matters is whether G.M. has asserted claims that cannot be insured as a matter of public policy in Indiana. By alleging Wyndham knowingly benefited from participation in a sexual trafficking venture, G.M. *has* asserted claims that cannot be insured as a matter of public policy in Indiana. Dkt. 35-1.

Tellingly, the type of argument Wyndham attempts to raise here has failed under similar circumstances elsewhere. In *Nautilus I*, for instance, the plaintiff claimed she was sexually trafficked in a motel owned and operated by the defendant and asserted a variety of claims (including negligence and emotional distress claims) against the defendant. 320 F. Supp. 3d at 638-39. In the coverage action, the court held public policy precluded insurance for the plaintiff's claims even though the defendant had never been convicted of a crime related to the trafficking. *Id*. at 643; *see also Rosenberg v. Hudson Ins. Co.*, 638 F. Supp. 3d 510, 522 (W.D. Pa. 2022) (explaining that "[a]

17

criminal conviction is not required to deny coverage on public policy grounds" and noting *Nautilus I* held "no duty to defend allegations of sex trafficking even though insureds were not criminally convicted").

Ultimately, this case presents the circumstances under which public policy bars insurance coverage in Indiana. Participating in, and profiting from, child sexual trafficking is precisely the type of moral hazard for which Indiana public policy precludes coverage. Furthermore, permitting insurance coverage would do nothing to dissuade child sexual trafficking. Since the essence of G.M.'s claims is that Wyndham knowingly profited from participation in a child sex venture, coverage cannot exist for the Underlying Lawsuit. As there is no circumstance under which Wyndham could be entitled to coverage for the Underlying Lawsuit that would be consistent with Indiana public policy, the Court need not wait for additional facts or developments to find coverage does not exist for the Underlying Lawsuit. *Town of Orland*, 726 N.E.2d at 371-72.

## C.     The Abuse Or Molestation Exclusion Bars Coverage To Wyndham

Next, Wyndham asks the Court to dismiss American Family's Amended Complaint because Wyndham believes American Family has failed to state a claim that the Policy's "Abuse or Molestation" Exclusion bars coverage to Wyndham. Dkt. 46 at 21-22. But American Family has properly stated that claim, and nothing in Wyndham's Brief warrants dismissing the case on this ground.

Among others, the Policy includes an "Abuse or Molestation" Exclusion Endorsement, which states, in part, that the insurance "does not apply to 'bodily injury' . . . or 'personal and advertising injury' arising out of: (a) the actual or threatened abuse or molestation **by anyone** of any person while in the care, custody, or control of **any insured[**.]" Dkt. 35-2 at 54 (emphases added). The Exclusion also bars coverage for the negligent employment, investigation, supervision, reporting to the proper authorities (or failure to so report), or retention of a person "for whom any

18

4893-1559-3174.13

insured is or ever was legally responsible and whose conduct would be excluded by" the first provision of the Exclusion. *Id*. In its Amended Complaint, American Family alleges this Exclusion bars coverage for Wyndham in connection with the Underlying Lawsuit. Dkt. 35 at ¶¶ 47-48.

Although Wyndham tells the Court it must dismiss the Amended Complaint because it is too early to determine whether the Exclusion applies to G.M.'s claims, it is not. Dkt. 46 at 22. Rather, G.M.'s allegations and established Indiana law dictate the Exclusion applies to bar coverage to Wyndham now.

On this point, *Holiday Hospitality Franchising, Inc. v. Amco Ins. Co*. is instructive.  983 N.E.2d 574 (Ind. 2013). There, the underlying action alleged a motel franchisee/operator's employee molested a minor at the motel. *Id*. at 576. The minor's family asserted various claims against the motel owner, operator, and franchisor (among others), all under theories of agency and vicarious liability. *Id*. When the defendants in the underlying action sought coverage from their insurer, the insurer responded that the policy's "abuse or molestation" provision barred coverage. *Id*. at 576-78. Notably, the implicated policy's "abuse or molestation" exclusion substantively mirrors the "Abuse or Molestation" Exclusion in American Family's Policy. *Id*. at 581; Dkt. 35-2 at 54.

After reviewing the facts giving rise to the allegations, the Indiana Supreme Court found the "abuse or molestation" exclusion barred coverage and affirmed the insurer's denial. *Id*. As the court explained first: "We think it obvious that the plain and ordinary meaning of the abuse/molestation exclusion as a whole is that both parties intended to exclude from coverage those claims arising from conduct like [the motel's employee's]." *Id*. at 578. While the court noted the exclusion "is limited to acts occurring when the victim is in the 'care, custody, or control' of any insured[,]" the court found the victim *was* in an insured's care, custody, or control at the time of the alleged abuse. *Id*. at 578-81. Specifically, the court concluded that—"as a matter of law" and at a minimum—the minor was in the "care" of the motel operator. *Id*. at 580. Among other things, the victim was

19

molested in a room rented at the motel. *Id*. Because of the victim's status as a guest, the operator "owed him a duty of care by law." *Id*. And since the exclusion barred coverage if the victim was in the care of "any insured," it applied to all underlying claims against all defendants (including the franchisor). *Id*. at 580-81.

Offering further support for its holding, the court acknowledged the facts giving rise to the underlying case "reflect[ed] precisely the sort of scenario contemplated by the parties to be excluded from coverage when they agreed to the insurance contract." *Id*. at 581. If the underlying case did not fit within the scope of the exclusion, the court "would struggle to imagine what reasonably could and still remain within the confines of an ordinary motel business." *Id*.

So too here. Wyndham does not dispute that G.M.'s alleged injuries arise out of her alleged or abuse or molestation. Dkt. 46 at 21-22. Further, Krupa is an "insured" under the Policy, and G.M. was allegedly abused while she was—as a "matter of law" and at a minimum—in the "care, custody, or control" of Krupa. Dkt. 35-2; Dkt. 46 at 9; *Holiday Hospitality*, 983 N.E.2d at 580-81. In her Complaint, G.M. repeatedly alleges she was "raped" and "otherwise sexually abused" "thousands and thousands of times" in rooms rented at the Motel continuously for three months. Dkt. 35-1 at ¶¶ 5, 48, 51, 81-87. G.M. makes clear that the rooms at the Motel where she was abused were rented and paid for (in cash). *Id*. And Wyndham states Krupa owns and operates the Motel. Dkt. 46 at 7, 18. Under *Holiday Hospitality*, G.M. was in the "care, custody, or control" of Krupa "as a matter of law." 983 N.E.2d at 580-81. In fact, as a guest at the Motel, Krupa owed her "a duty of care by law." *Id*.

Since the Policy's "Abuse or Molestation" Exclusion excludes coverage for abuse or molestation by anyone of any person while in the care, custody, or control of **any insured**—and since G.M. alleges she was raped and abused while, at a minimum, in the care, custody, or control

20

of Krupa (an indisputable insured)—the Exclusion bars coverage for the claims against **all defendants**, including Wyndham. Dkt. 35-2 at 54; *Holiday Hospitality*, 983 N.E.2d at 581.[15]

While Wyndham asks this Court to dismiss the action because Wyndham believes the Exclusion cannot apply at this stage, Wyndham fails to provide any meaningful support for its position. Dkt. 46 at 21-22. Rather, Wyndham's arguments only further demonstrate the Exclusion applies at this stage, as *Holiday Hospitality* effectively addresses these types of arguments.

For instance, Wyndham argues G.M. was not in the "care, custody, or control" of any insured because her traffickers rented the rooms at the Motel, not G.M. herself. Dkt. 46 at 21. But the Indiana Supreme Court has explained that who *rents* the room at the motel does not dictate who is the in the *care, custody, or control* of the motel's operator. *Holiday Hospitality*, 983 N.E.2d at 580. What matters is whether the victim was staying in a room at the motel and was, thus, a guest of the motel. *Id*. In *Holiday Hospitality*, the court determined the victim was in the "care" of the motel operator even though it was the victim's mother's friend who rented the room where the victim was molested. *Id*. Since the victim was staying in a room rented at the motel, he was in the "care" of the motel operator. *Id*. Here, G.M. clearly alleges she was raped and abused within rooms that she stayed in which were rented and paid for at the Motel. Dkt. 35-1 at ¶¶ 5, 48, 51, 81-87.

The only other specific allegation Wyndham highlights in making this argument fails for a similar reason. Dkt. 46 at 21. Wyndham implies that because G.M. asserts the defendants "discussed, developed, and implemented uniform policies' against human trafficking[,]" it means her traffickers acted outside "the scope of any authorized use." *Id*. But even if the traffickers did act outside "the scope of any authorized use," that would have no bearing on whether G.M. was in the

---

[15] The second provision in the "Abuse or Molestation" Exclusion Endorsement would also apply to bar coverage too. But the Court need not evaluate that provision at this time because the first provision precludes coverage, and American Family has stated a claim under it.

"care, custody, or control of any insured" at the time of the alleged abuse. In *Holiday Hospitality*, the court expressly noted that the abuser "was found to have been acting outside the course and scope of his employment when he molested [the victim]." 983 N.E.2d at 576 n.3. Still, the court ruled the victim was in the "care" of the motel operator as a matter of law. *Id*. at 581.[16]

Contrary to Wyndham's claims otherwise, the Court does not need to dismiss American Family's claim as premature. Where the implicated pleading only alleges facts that would give rise to a barred claim, Indiana law does not require the insurer to provide a defense. *See Jim Barna*, 791 N.E.2d at 823. And it certainly does not require the insurer to wait until the conclusion of the underlying lawsuit to obtain a coverage determination. G.M. asserts claims that are necessarily barred by the "Abuse or Molestation" Exclusion, and there is no circumstance under which G.M. could succeed on the pled allegations without triggering the Exclusion. American Family's Amended Complaint should not be dismissed on this ground.

## D.    The Policy Does Not Provide Coverage Because There Was No "Occurrence" And Wyndham Acted Intentionally

Next, Wyndham asks the Court to dismiss the Amended Complaint because American Family has not stated a claim to deny coverage based on several intention-related Policy provisions. But American Family has stated a claim as to those provisions given the nature of G.M.'s allegations.[17]

In general, the Policy contains multiple provisions dictating that coverage does not exist for injuries that are expected or intended. As a threshold matter, to trigger any coverage for "bodily injury" under the Policy, the injury must be "caused by an 'occurrence'"—a term the Policy defines

---

[16] While Wyndham claims G.M.'s Complaint alleges Wyndham was "not aware of the presence of G.M."—even if that allegation was relevant—Wyndham fails to cite any allegation to support it.  Dkt. 46 at 21. To the opposite, G.M. repeatedly asserts Wyndham knew of her presence at the Motel over the three-month period and that she encountered and interacted directly with staff at the Motel. Dkt. 35-1 at ¶¶ 55-56; 81-87.

[17] In its Brief, Wyndham specifically references the Policy's "occurrence" requirement, its "expected or intended" provision, its "knowledge" provision, and its "criminal acts" provision. Dkt. 46 at 19-20.

to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. 35-2 at 34, 44. Indiana courts have explained, "[i]n the context of insurance coverage, an accident means an unexpected happening without an intention or design." *State Farm Fire & Cas. Co. v. C.F.*, 812 N.E.2d 181, 184 (Ind. Ct. App. 2004) (internal citations and quotations omitted). Other provisions in the Policy similarly bar coverage for intentional or criminal conduct undertaken by the insured or where the insured expected the relevant injuries to occur. *See, e.g.*, Dkt. 35-2 at 36.

In the Underlying Lawsuit, G.M. does not allege her injuries arose out of any "accident" or anything that happened unexpectedly. Instead, G.M. repeatedly asserts that Wyndham *knowingly* benefited from its participation in the sexual trafficking of a child. Dkt. 35-1. And G.M. highlights examples of Wyndham's participation in the alleged sexual trafficking. *Id.* According to G.M., Wyndham failed to take any action to stop the trafficking occurring at the Motel despite numerous "red flags" of the trafficking that were "open and obvious to anyone working at [the Motel] and lasted continuously for months." *Id.* at ¶¶ 81-87, 125, 129, 17, 55-56. Such red flags included: loud noises of abuse or other emergency audible to staff, visible signs of prior and private physical abuse, unusually large number of male visitors asking for G.M., frequent requests for linen changes, and unusually large number of used condoms in the trash, among other things. *Id.* at ¶ 85. Moreover, G.M. further pleads that Wyndham "failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to stop reaping the benefits of sexual exploitation[]" so that Wyndham could "maximize" its profits. *Id.* at ¶ 129.

Throughout the Complaint, G.M. indicates her alleged abuse and injuries could have been avoided if Wyndham would have acted appropriately. Dkt. 35-1. In one allegation, G.M. expressly states that if Wyndham "would have taken proper measures, [it] would not have profited from G.M.

and other victims like her being trafficked at [the Motel]." *Id*. at ¶ 125. Knowingly profiting from participation in a sexual trafficking venture is the opposite of an accident.

Based on the allegations, there is nothing fortuitous about G.M.'s damages—even from Wyndham's perspective. Rather, the alleged "red flags" of G.M.'s repeated sexual abuse were "open" and "obvious" for three months, and Wyndham failed to take any action to prevent G.M. from being "raped" and "abused" "thousands and thousands of times." Dkt. 35-1 at ¶¶ 85-87, 55-56. At bottom, G.M. asserts Wyndham was complicit in the sexual trafficking and knowingly benefitted from it. Wyndham could not have taken "proper measures" to stop the abuse, as G.M. alleges, if Wyndham was not aware the abuse was occurring the first place. *Id*. at ¶ 125. Under those circumstances, her injuries did not result from an "occurrence." *See, e.g.*, *Homesite Ins. Co. v. Schlackman*, 671 F. Supp. 3d 1205, 1215-16 (W.D. Wash. 2023) (finding that sexual trafficking allegations against insured did not result from an "occurrence" where insured was allegedly complicit in the trafficking and it was "reasonably foreseeable" that insured's actions relating to sexual trafficking scheme would result in injuries to the victim). That Wyndham denies the allegations does not change the fact that the Underlying Lawsuit alleges knowing and/or intentional conduct barring coverage.

For the same and similar reasons, American Family has not failed to state a claim regarding the other "intentionality" provisions in the Policy. For instance, the Policy's "expected or intended" exception bars coverage because G.M.'s allegations show her alleged injuries were expected or intended from Wyndham's perspective. Dkt. 35-2 at 36. Likewise, even if it is determined G.M. seeks damages for "personal and advertising injury," any such injury was caused by or at the direction of Wyndham with the knowledge that it would violate the rights of another and arose out of criminal acts allegedly committed by, or at the direction of, Wyndham. Dkt. 35-2 at 39. Thus, American Family has stated a claim that those provisions of the Policy similarly bar coverage.

Although Wyndham argues these provisions do not apply because G.M.'s claims "sound in negligence," that argument would not warrant the dismissal of the Amended Complaint even if true. Dkt. 46 at 20. First, G.M. only asserted two claims against Wyndham—one under the TVPRA and one under CAVRA, and none under a negligence theory. G.M.'s claims necessarily include those for "knowing" conduct, as it is a necessary element of the claims. 18 U.S.C. §§ 1589, 1590, 1591 1595; 2255(a); *see* Dkt. 35-1 at ¶ 18 ("Each Defendant, knowingly benefitted from participation in a venture . . .); *id*. at ¶ 26(d) ("Wyndham knowingly benefited, or received something of value, from its ventures at the [Motel] . . . ."); *id.*at ¶ 179 ("Defendants knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiff . . . .); *id*. at ¶ 180 ("Defendants knowingly benefited, financially or by receiving anything of value, from participation in ventures . . . .).

In any event, claims that *do* sound in negligence can still result from something other than an "occurrence" and can still trigger a policy's intentionality-based exclusions.  That is, the mere pleading of "negligence-sounding" claims does not automatically create coverage. *See, e.g.*, *Wiseman ex rel. Wiseman v. Leming*, 574 N.E.2d 327 (Ind. Ct. App. 1991) (holding policy's "expected or intended" exception barred coverage for multiple claims, including negligence, against insured arising from insured's molestation of child); *City of Jasper, Ind. v. Employers Ins. of Wausau*, 987 F.2d 453, 457 (7th Cir. 1993) (finding insurer had no obligation to defend negligence action because no "occurrence" was alleged and stating "[a] volitional act does not become an accident simply because the insured's negligence prompted the act") (internal citations and quotations omitted).

Moreover, despite Wyndham's suggestions otherwise, denying coverage on these grounds does not require knowing Wyndham's subjective intent. Dkt. 46 at 20. Since G.M.'s claims require her to show that Wyndham acted with the requisite intent to preclude coverage, nothing further is

25

needed. Courts do not need to know an insured's subjective intent to find these provisions bar coverage. *See, e.g.*, *Wiseman*, 574 N.E.2d at 329 (where intent could be inferred from defendant's alleged actions relating to child molestation, "the subjective intent of the defendant is irrelevant").

The Court should not dismiss the Amended Complaint on this ground.

**E.    The Policy Does Not Provide Personal And Advertising Injury Coverage**

Next, Wyndham asks the Court to dismiss the Amended Complaint because American Family has not stated a claim to deny "personal and advertising injury" coverage. Dkt. 46 at 22-23.

While the Policy provides "personal and advertising injury" coverage, to trigger such coverage, the underlying complaint must allege in relevant part "injury, including consequential 'bodily injury', arising out of one or more of the following offenses . . . False arrest, detention, or imprisonment." Dkt. 35-2 at 44; Dkt. 46 at 23.

As a threshold mater, G.M.'s Complaint makes no claim for an injury arising from false arrest, detention, or imprisonment. *Id*. at ¶¶ 168-181. And, even if such a claim was implied, it is not separate and distinct from the trafficking injury. *See, e.g.*, *Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696 (Minn. 1996) (insurer not required to defend insured against false imprisonment claim where claim was "inextricably linked" to the insured's sexual assault of plaintiff, for which there was no coverage).

However, the Court need not grapple with the existence or non-existence of a "personal and advertising" injury. Even if the Underlying Lawsuit did allege "personal and advertising injury," the Policy would preclude coverage under the exceptions and exclusions cited above.  Indeed, the "Abuse or Molestation" exclusion, the intentionality exclusions, and Indiana public policy apply equally to any coverage for "personal and advertising injuries."   Thus, Wyndham's reference to "personal and advertising injury" does not save its coverage arguments.

26

**F.    The Policy Does Not Provide Coverage For Punitive Damages**

Next, Wyndham asks the Court to dismiss the Amended Complaint because American Family has not stated a claim to deny coverage for punitive damages. Dkt. 46 at 23-24. But American Family has stated a proper claim on that provision.

In part, American Family seeks a declaration that the Policy does not provide coverage for any punitive or exemplary damages awarded in the Underlying Lawsuit.  Dkt. 35 at ¶¶ 52-55. Not only does Indiana preclude coverage for punitive damages under certain circumstances as a matter of public policy, the Policy expressly states that "[t]his insurance does not apply to [p]unitive or exemplary damages[.]" Dkt. 35-2 at 64; *Stevenson*, 672 N.E.2d at 474-75. For her part, G.M. expressly seeks "punitive damages" in the Underlying Lawsuit. Dkt. 35-1 at ¶ 181, p. 48.

Wyndham argues this claim should be dismissed because it is "premature and unnecessary to determine this issue prior to the resolution of the Underlying Action[,]" but it is not. Dkt. 46 at 24. Where it is clear from the face of a pleading that the Policy could not provide coverage for a judgment rendered against the insured, Indiana does not require the insurer to wait until the uncovered judgment is entered to seek a ruling as to its coverage obligations. Here, since there is no scenario under which a judgment for punitive damages could be covered under the Policy, the Court can issue the requested declaratory judgment now.[18]

**G.    The Court Can Decide This Case Now**

Finally, Wyndham argues the Court should dismiss or stay American Family's request for a declaration that it owes no duty to indemnify Wyndham for the Underlying Lawsuit because the request is premature. Dkt. 46 at 28-31. But if the Court finds that American Family has no duty to

---

[18] Wyndham also notes that American Family's duty to defend is not "extinguished" because the Amended Complaint seeks punitive damages, but American Family never claimed it was. Dkt. 46 at 24-35. Rather, American Family seeks a declaration that the Policy does not provide coverage for the punitive or exemplary damages sought in the Underlying Lawsuit—a declaration the Court can issue at this stage.  Dkt. 35 at ¶¶ 52-55.

27

defend Wyndham in the Underlying Lawsuit, there is no legal possibility that American Family has a duty to indemnify, either. *Preferred Financial Solutions*, 8 F. Supp. 3d at 1043.

In Indiana, the duty to defend is broader than the duty to indemnify. *See Westfield Ins. Co. v. Gil Behling & Son, Inc.*, No. 2:08–CV–317–TS, 2010 WL 989933, at \*14 (N.D. Ind. Mar. 15, 2010). Thus, if an insurer proves it has no duty to *defend* its insured in connection with an underlying case, it necessarily cannot have any duty to *indemnify* the insured either. *Id.* Accordingly, where an insurer seeks a declaration that its policy does not provide any coverage in connection with an underlying lawsuit, the insurer can obtain a ruling as to both duties before the underlying lawsuit concludes. *Id.*; *see also Preferred Financial Solutions*, 8 F. Supp. 3d at 1043 ("On the other hand, if it is clear that the claims against the insured are 'patently outside the risks' for which coverage is afforded by the Policies, then Allstate has no duty to defend the claims or, of course, to indemnify its insureds in the event that the claims are decided against them.").

Consistent with that standard, Indiana courts have issued countless rulings regarding an insurer's duty to indemnify for an underlying lawsuit even while that underlying lawsuit remains pending. *See, e.g.*, *Standard Mut. Ins. Co. v. Kidd*, 136 F. Supp. 2d 950, 952, 957 (S.D. Ind. 2001); *Secura Ins. v. Cera Sports Corp.*, No. 1:19-cv-00643-RLY-MG, 2021 WL 5029521, at \*2 (S.D. Ind. Sep. 3, 2021); *Preferred Fin. Solutions, Inc.*, 8 F. Supp. 3d at 1054; *Lightning Rod*, 2021 WL 11963037, at \*5.

While Wyndham claims such a result would be improper here because the Court needs to decide factual issues, as explained above, it does not. Rather, the Court can issue the relief American Family seeks without resolving issues that would be better left to the court in the Underlying Lawsuit. For instance, this Court can rule that public policy bars coverage for the types of claims asserted against Wyndham without waiting to know if Wyndham is found liable for those claims. *See, e.g.*, *Secura*, 2021 WL 5029521, at \*2 (holding insurer "has no duty to defend or indemnify"

28

insured in pending lawsuit because Court could conclude policy's "expected or intended" injury exclusion applied).

Based upon the allegations asserted by American Family and the precedent from this Court, American Family's Amended Complaint presents ripe claims regarding its duty to indemnify in the Underlying Lawsuit.

**H.**    **Wyndham's Requested Relief**

Even if the Court agrees with Wyndham's arguments and seeks to dismiss American Family's claims, the Court should make clear that American Family may reapply for a declaratory judgment regarding any duty to defend or to indemnify if further developments or investigation relating to the Underlying Lawsuit warrant.

## CONCLUSION

For the reasons set forth above, Wyndham has not and cannot demonstrate that it is entitled to any coverage.  As such, its Motion to Dismiss the Amended Complaint should be denied.

Respectfully submitted,

ICE MILLER LLP

*/s/ Samuel B. Gardner*
Nicholas B. Reuhs (# 31181-49)
Samuel B. Gardner (#32825-29)
John D. French (#37629-53)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100
nicholas.reuhs@icemiller.com
samuel.gardner@icemiller.com
jd.french@icemiller.com

*Counsel for Plaintiff*
*American Family Mutual Insurance*
*Company, S.I. f/k/a American Family Mutual*
*Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 9, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served on all counsel of record thereby.

*/s/ Samuel B. Gardner*
Samuel B. Gardner

4893-1559-3174.13